IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

RONALD PUGH,

           *Plaintiff,*

    v.

VALMONT INDUSTRIES, INC.,

           *Defendant.*

Civil Action No. 2:23-cv-1520

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

    Before the Court is Defendant Valmont Industries, Inc.'s ("Valmont") motion to dismiss ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 13).  Plaintiff Ronald Pugh ("Pugh") filed his initial complaint against Valmont in the Court of Common Pleas of Beaver County, Pennsylvania.  (ECF No. 1-1).  Upon removal, Pugh filed an amended complaint ("Amended Complaint") on September 13, 2023.  (ECF No. 11).  In the Amended Complaint, Pugh asserts a violation of the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq.* ("Whistleblower Law") (Count I), and a claim of wrongful discharge in the alternative (Count II).  Valmont moves to dismiss Pugh's entire Amended Complaint with prejudice and without leave to amend.  (ECF No. 13).  For the reasons that follow, the Court holds that dismissal is warranted.

### I.    FACTUAL BACKGROUND

    This suit arises from Valmont's alleged wrongful and retaliatory termination of Pugh in January 2023.  Valmont operates Valmont-Pittsburgh Galvanizing, a galvanizing facility in Midland, Beaver County, Pennsylvania.  (ECF No. 11, ¶ 3).  Pugh began working for Valmont as a maintenance technician in or around November 2022.  (*Id.* ¶ 6).  Pugh's direct supervisor was

Andrew Cellini ("Cellini"). (*Id.* ¶ 7). Cellini directed Pugh in his first week on the job to perform maintenance tasks alleged to be incompliant with the Occupational Safety and Health Act, 29 U.S.C. § 651, *et seq.* and the Pennsylvania General Safety Law, 43 P.S. § 25-1, *et seq.* (*Id.* ¶ 8). Continuing throughout his employment, Pugh presented several complaints to his superiors regarding the shortcomings of Valmont's safety precautions. (*Id.* ¶¶ 10-11, 13-14, 21). Pugh additionally informed his superiors "[o]n a number of occasions" that "he opposed performing work without the proper safety measures in place." (*Id.* ¶¶ 9, 14).

The events alleged to have led to Pugh's termination occurred in or around late January 2023. (*Id.* ¶¶ 26, 29). On or around Tuesday, January 24, 2023, a supervisor tasked Pugh with performing maintenance work on a crane. (*Id.* ¶ 26). At the start of Pugh's shift that day, the crane was not available to complete his task, so Pugh completed other responsibilities in the meantime. (*Id.* ¶ 27). It is not alleged that Pugh went back to check whether the crane ever became available that day, but he asserts that he was never informed "by management or otherwise" that the crane was both available and safe for maintenance work. (*Id.* ¶ 28). The next day, on or about Wednesday, January 25, 2023, Pugh arrived at work and was "immediately accosted by [Cellini]" for failing to complete his work on the crane the previous day. (*Id.* ¶ 29).

Pugh and Cellini disputed when the crane became available for Pugh to perform his assigned work, leading Pugh to question Cellini as to "why he was not truthful about his representation" regarding when Pugh would have been able to conduct the maintenance. (*Id.* ¶¶ 30-32). Pugh then went to discuss with other employees both the feasibility of performing his tasks on the crane the prior day and Cellini's accosting of him for failing to complete them. (*Id.* ¶¶ 33-34). Ultimately, "[a]s a result of the disrespect shown by [Cellini]," Pugh decided to leave

work for the day. (*Id.* ¶ 35). Before exiting the facility, Pugh stopped by Cellini's office to let him know that he was leaving to which Cellini responded "OK." (*Id.* ¶ 36).

On or about the following Monday, January 30, 2023, Sandra Dean, a human resources employee at Valmont, called Pugh to inform him that he was terminated for his misconduct. (*Id.* ¶ 37). The Amended Complaint does not allege what this referenced "misconduct" included. It is also unclear from the pleadings whether Pugh was to report for work between Wednesday, January 25, 2023, and his ultimate dismissal on January 30, 2023.

On July 26, 2023, Pugh initiated suit against Valmont in the Court of Common Pleas of Beaver County, Pennsylvania. (ECF No. 1-1). Valmont removed the case to this court on August 21, 2023. (ECF No. 1). Then, on September 27, 2023, Valmont filed its Motion asking the Court to dismiss Pugh's entire Amended Complaint with prejudice and without leave to amend. (ECF No. 13).

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

#### A. Pugh has not pled a viable claim under the Pennsylvania Whistleblower Law.

Valmont argues that Pugh's claim under the Whistleblower Law fails as a matter of law for three reasons: (1) Pugh failed to properly plead that he complained of "waste" by a covered "employer;" (2) Pugh did not allege the occurrence of "waste" or "wrongdoing" by a public body; and (3) Pugh did not adequately plead that his termination was caused by his alleged safety complaints. (ECF No. 14, pp. 5-11). Pugh maintains that he has sufficiently pleaded a claim under the statute by alleging both "wrongdoing" by a "public body" and reporting "wrongdoing" to an "employer," while also asserting that his termination was causally related to his safety complaints. (ECF No. 16, pp. 6-12).

> 1. Pugh's Count I claim is unsustainable under the plain statutory language of the Whistleblower Law.

The Whistleblower Law provides, in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against
> an employee regarding the employee's compensation, terms, conditions, location
> or privileges of employment because the employee or a person acting on behalf of
> the employee makes a good faith report or is about to report, verbally or in writing,
> to the employer or appropriate authority an instance of wrongdoing or waste by a
> public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a).  The statute's plain language makes it unlawful for an employer to "discharge, threaten or otherwise discriminate or retaliate against" any employee for making a good faith report of "wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act." (*Id.*).  Taking the words in the statutory provision, as written, to sufficiently plead a claim under the Whistleblower Law a plaintiff can maintain a claim by either alleging (1) wrongdoing or waste by a public body or (2) waste by an employer. (*Id.*).

In Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, Pugh states that the Amended Complaint "does not ground the [Whistleblower Law] claim on a good faith report of waste, but rather of 'wrongdoing.'" (ECF No. 16, p. 6).  Based on this, and the plain language of § 1423(a), the Court need not consider whether Valmont is an employer, as defined in the statute, because a mere employer under the Whistleblower Law can only be held liable if an employee reported waste.  Because Pugh alleges only wrongdoing, he cannot prevail unless Valmont is a "public body." *See Dorsey v. Merakey USA*, Civil Action No. 18-4837, 2019 WL 13269709, at *2 (E.D. Pa. Feb. 27, 2019) ("[Plaintiff] claims only that she objected to 'wrongdoing,' not 'waste.' Accordingly, she must plead facts sufficient to establish that defendants are public bodies.").  Thus, the critical question for the Court is whether Valmont is a public body.

A "public body" is defined in the Whistleblower Law as all of the following:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.
(1.1) The General Assembly and its agencies.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

**(3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.**

43 P.S. § 1422 (emphasis added).  It is not in dispute that Valmont does not fall within subsections (1), (1.1), or (2) of the statutory definition of public body.  There is dispute that whether, by receiving money for providing services in its line of work, Valmont falls within the definition set forth at subsection (3).  It is not enough for a plaintiff to merely allege that an entity is "funded by the Commonwealth of Pennsylvania and/or its subdivisions."  *Payne v. Wood Servs., Inc.*, 520 F. Supp. 3d 670, 678 (E.D. Pa. 2021).  Rather, a complaint must contain facts that support the allegations as to how the entity is publicly funded.  (*Id.*).

Pugh contends that Valmont is a public body because it is funded "by or through" the Commonwealth by a public entity of the state that paid Valmont for the contractual rendering of services.  (ECF No. 11, ¶ 47 (citing *Romer v. MHM Health Pros.*, Civil No. 1:20-cv-1275, 2020 WL 6747418, at *3 (M.D. Pa. Nov. 17, 2020)).  More specifically, Pugh alleges that Valmont "receives funding from the Commonwealth of Pennsylvania and Pennsylvania cities, counties, and other political subdivisions, in that it works on public projects in Pennsylvania, and acts as a direct contractor and/or subcontractor on those public projects." (*Id.* ¶ 48).

Pugh's averments that Valmont received money from public entities, while accepted as true, do not support a determination that it is "funded" as that term is statutorily defined at subsection (3) of § 1422.  *See Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) ("[A]lthough neither the Pennsylvania Supreme Court nor this Court has passed on the issue, the federal district courts in Pennsylvania have consistently concluded that a private entity does not qualify as a public body merely because it receives state funds through contracts

with public programs or government agencies."). If the Court were to find that a private entity may be considered a public body solely because it received either direct or indirect funds from a state entity in payment for services, it would contravene the statutory definition and also mandate nonsensical results.

First, a determination that Valmont is a public body because it received payments for services it provided to governmental entities is unsustainable from a statutory construction perspective. It would render every employer, as defined by the Whistleblower Law, a public body. An "employer" is defined, in relevant part, as "[a] corporation for profit" that "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." 43 P.S. § 1422. Thus, by receiving funds for the performance of services, a private company is an employer under the statute and, under Pugh's interpretation, would be a public body as well. Under the Statutory Construction Act of 1972, "[e]very statute shall be construed, if possible, to give effect to all its provisions" so that no provision is "mere surplusage." 1 P.S. § 1921(a); *see also Commonwealth v. Sanchez-Frometa*, 256 A.3d 440, 444 (Pa. Super. 2021) (citations omitted). In reading the definition of "employer" to swallow up that of "public body," the Court would be run afoul of the cannons of statutory interpretation that Pennsylvania has put in place by creating surplusage. Further, the statutory language itself mandates that "employer" and "public body" not be conterminous definitions. The statute applies to employers who engage in waste, but more broadly applies to waste and misconduct for public bodies.[1]

---

[1] Statutes must also be construed in a manner that avoids absurd results. 1 P.S. § 1922(1). Pugh's interpretation of the definition of public body is so far-reaching that it would lead to an absurd result that expansively converts many private entities into public bodies. As an example, consider state or local police officers stopping at a privately owned gas station to fuel a police cruiser. Under Pugh's argument, the gas station would be a public body, although it is almost happenstance

Statutory construction principles preclude the Court from applying the definition of public body advocated by Pugh. Valmont is not, as pled, a public body. As a result, Pugh may only maintain a claim under the Whistleblower Law if he alleges that Valmont is an employer engaged in waste, which he does not. As such, Pugh has not pled a cognizable claim under the Whistleblower Law. Count I must be dismissed.

2. Pugh's Amended Complaint fails the heightened pleading standard for claims brought under the Whistleblower Law.

In the alternative, even if Valmont did fall within the definition of a public body, Pugh has not met the higher pleading standard that the Whistleblower Law requires related to the causal connection of his good faith reporting and the alleged retaliation. In order to make out a prima facie claim under the statute, a plaintiff needs to "show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information they received not to file the report or there would be adverse consequences because the report was filed." *Golaschevsky v. Commonwealth, Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998) (citation omitted).

Pugh has not met his burden here. The Amended Complaint asserts that "[Pugh] was terminated in retaliation for complaining about consistent and unaddressed federal and state safety violations and as a result of his refusal to engage in unsafe conduct that contravenes federal and state safety standards." (ECF No. 11, ¶ 55). Taking these factual allegations to be true, the Amended Complaint also demonstrates other potential occurrences that could have led to the termination of Pugh's at-will employment. For example, Pugh openly opposed performing tasks

---

that a publicly funded entity, as police departments are, decided to pay money to the gas station for the fuel it received. Such a tenuous, transactional relationship cannot bring a private entity in this context into the public sphere.

assigned to him (albeit because he allegedly did not want to perform them without the proper safety measures in place), confronting Cellini (his supervisor) about why he "was not truthful about his representation" as to the crane's availability, and walking off the job in the middle of a workday. (*Id.* ¶¶ 8-9, 11-12, 14, 29-32, 35-36). Even considering all of these facts alleged in a light most favorable to Pugh, he has not demonstrated that there is a sufficient nexus between his good faith reporting of safety issues and his subsequent termination to meet the statute's higher pleading standard.

Since Pugh did not allege waste and failed to establish both that Valmont is a public body and a causal connection between his reporting of safety concerns and dismissal, the Court will dismiss Pugh's Count I claim under the Whistleblower Law. [2]

### B. Count II of the Amended Complaint is dismissed because Valmont did not offend Pennsylvania public policy when it terminated Pugh's employment.

Pugh also pleads a claim for wrongful discharge under Pennsylvania common law. Pugh alleges that Valmont, by terminating his employment, offended the public policy of the Commonwealth of Pennsylvania as embodied in the Pennsylvania General Safety Law. (ECF No. 11, ¶ 61). Pugh acknowledges that there are three identified public policy exceptions to Pennsylvania's general at-will employment doctrine but does not argue that his assertions based on the General Safety Law fall in any of them. (ECF No. 16, pp. 15-16). Instead, Pugh implies that the Court should recognize that certain sections of the General Safety Law are clear mandates of Pennsylvania public policy, and by discharging him, Valmont engaged in an adverse employment action that implicated these clearly articulated public policy concerns. (*Id.* at 14, 16-18). Valmont responded by asserting that Pugh's public policy arguments do not fall within the

---

[2] In light of the Court's conclusion, it need not analyze whether Pugh sufficiently pleaded "wrongdoing" under the Whistleblower Law.

three narrowly circumscribed exceptions, and the Court should not be persuaded in creating an additional carve-out in light of Pugh's arguments. (ECF No. 14, pp. 13-14); (ECF No. 17, pp. 8-11).

Courts applying Pennsylvania law work under the "extremely strong" presumption that all non-contractual employment relations are at-will. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). Given this, it is generally accepted that an employer may discharge an at-will employee for any reason, with or without cause. *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 737 (E.D. Pa. Aug. 26, 2011) (citing *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998)). There are very limited exceptions to this, specifically constrained to those which implicate a "clear mandate of public policy." *McLaughlin*, 750 A.2d at 286 (quoting *Geary v. United States Steel Corp.*, 319 A.2d 174, 180 (Pa. 1974)). Pennsylvania courts are protective of this narrow delineation, "lest the exception swallow the general rule." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003).

There are three recognized narrow situations where public policy creates exemptions. "[A]n employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. 1998). Although the Pennsylvania Supreme Court has never formally adopted these three exceptions, it noted that any "non-legislatively expressed public policy must be extremely clear to be cognizable," essentially directing that its "acceptance must be virtually universal." *Fraser*, 352 F.3d at 111-12 (citing *Shick*, 716 A.2d at 1235).

Pugh's assertions under the Pennsylvania General Safety Law do not bring his wrongful termination within any of the three recognized public policy exceptions. Pugh does not allege that

10

Valmont required him to commit a crime, nor does he plead that Valmont prevented him from complying with a statutorily imposed duty. *Hennessy*, 708 A.2d at 1273. Finally, Pugh has not pointed to any statute which specifically prohibits Valmont discharging him. (*Id.*). Thus, Pugh's common law cause of action must be grounded in an extremely clear, virtually universal mandate of public policy. *See Fraser*, 352 F.3d at 111-12.

Pugh fails to demonstrate that his termination "threatens a clear and substantial public policy in this Commonwealth." *McLaughlin*, 750 A.2d at 288. While the General Assembly has "expressly encouraged" health and safety requirements for all establishments, the General Safety Law does not signify such a clear and universal public policy within Pennsylvania. (*See* ECF No. 16, p. 17). Moreover, to recognize such an exception would essentially swallow the Whistleblower Law itself, rendering the cause of action afforded to whistleblowing employees superfluous. This is the case because an expansion of the public policy exceptions that would include retaliatory action of an employer towards an employee who reports safety hazards will become duplicative of the fundamental purpose of the Whistleblower Law. Therefore, the Court will refrain from adding additional exemptions to the already firmly established few carve-outs. Pugh's Count II claim from wrongful termination is dismissed.

## V.   CONCLUSION

Defendant Valmont's Motion will be granted in its entirety. Both Count I and Count II of the Amended Complaint are dismissed with prejudice. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-14-23
_____